**Affirmed and Opinion Filed October 9, 2024**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00659-CV

**TERRENCE GORE, Appellant**
**V.**
**TRANS UNION LLC, Appellee[1]**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-15076**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Goldstein, and Miskel
Opinion by Justice Partida-Kipness

Terrence Gore appeals a summary judgment in favor of Appellee Trans Union LLC on Gore's claims under Chapter 20 of the Texas Business and Commerce Code (TBCC). Gore's claims relate to Trans Union's inclusion of Gore's prior bankruptcy in his credit file. Gore raises five issues on appeal, asserting: (1) the trial court erred in granting summary judgment in favor of Trans Union; (2) federal law preempts an award of attorney's fees under the TBCC; (3) Trans Union is not a "prevailing party"

---

[1] Appellant styled the appeal as *Terrence Gore, Appellant v. Equifax Information Service LLC, et al., Appellee*. However, Equifax was dismissed at the trial court and is not a party to this appeal. The correct and only appellee is Trans Union LLC.

and therefore is not entitled to attorney's fees under the TBCC; (4) the trial court lacked jurisdiction to award attorney's fees; and (5) the trial court abused its discretion in sustaining Trans Union's objections to Gore's summary judgment evidence. We affirm.

## BACKGROUND

Gore filed for Chapter 13 bankruptcy on January 14, 2015. *See* 11 U.S.C. §§ 1301-1330. The case was converted to a Chapter 7 bankruptcy on September 13, 2015. *See id.* §§ 701-784. The bankruptcy was discharged on January 19, 2016.

Trans Union is a "consumer reporting agency" as defined by the TBCC.[2] Trans Union generates consumer credit reports, relying in part on public record information provided by third parties such as Lexis/Nexis. Trans Union included Gore's bankruptcy filing under the "Public Records" portion of Gore's credit file. Gore's Chapter 7 bankruptcy was last updated in his Trans Union credit file on January 20, 2016, to reflect the bankruptcy had been discharged on January 19, 2016.

On August 23, 2022, Trans Union received correspondence from Gore disputing the Chapter 7 bankruptcy in his credit file. Therein, Gore asserted Trans Union was erroneously including the bankruptcy in his credit file because he

---

[2] Relevant here, a "consumer reporting agency" is a person that regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers to furnish consumer reports to third parties for a fee. TEX. BUS. & COM. CODE § 20.01(5). A "consumer report" is "a communication or other information by a consumer reporting agency relating to the credit worthiness, credit standing, credit capacity, debts, character, general reputation, personal characteristics, or mode of living of a consumer that is used or expected to be used or collected, wholly or partly, as a factor in establishing the consumer's eligibility for credit…." *Id.* § 20.01(4).

believed a seven-year reporting period was applicable to Chapter 13 bankruptcies. In response, Trans Union began a reinvestigation into the accuracy of the information. Trans Union employees reviewed court documents from Gore's bankruptcy case and verified the bankruptcy was accurately reported, with a scheduled removal date of December 2024 (just under ten years from the date of the bankruptcy filing). Trans Union sent the results of its reinvestigation to Gore on August 27, 2022, just four days after receiving Gore's correspondence.

Unsatisfied with Trans Union's response, Gore filed suit against Trans Union in October 2022. Gore asserted Trans Union violated several provisions of Chapter 20 of the Texas Business and Commerce Code. Gore sought damages, a declaratory judgment, and injunctive relief. Trans Union removed the case to federal court on January 3, 2023. The case was remanded to state court on March 21, 2023.

Gore then filed a traditional motion for summary judgment on his claims. In support, Gore attached his affidavit and numerous documents he claimed supported judgment in his favor. Trans Union responded to Gore's motion, asserting it had accurately reported Gore's bankruptcy and the TBCC allows a ten-year reporting period for bankruptcies. Trans Union also filed numerous objections to Gore's summary judgment evidence. Trans Union later filed no-evidence and traditional motions for summary judgment on Gore's claims and again argued it had accurately and legally reported Gore's bankruptcy. Trans Union also moved for its attorney's

fees under TBCC Chapter 20 and alternatively as sanctions against Gore under Texas Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code.

After a hearing, the trial court granted Trans Union's motions for summary judgment as to all of Gore's claims and denied Gore's opposing motion. The trial court signed another order sustaining Trans Union's objections to Gore's summary judgment evidence. The trial court signed a third order ruling that Trans Union was entitled to its attorney's fees as the prevailing party under TBCC Section 20.08(c), but the court denied Trans Union's sanction requests. Per the trial court's request, Trans Union submitted attorney's fees evidence by way of affidavit and billing records. Gore filed a motion to set aside the summary judgment and objected to an award of attorney's fees. The trial court then signed a final judgment incorporating its prior orders and awarding Trans Union $32,184.70 in attorney's fees. This appeal followed.

**STANDARD OF REVIEW**

We review the trial court's summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). To prevail on a traditional summary judgment motion, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* To defeat a no-evidence motion, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. *Id*. We take as true all

evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.*

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). The reviewing court should render the judgment the trial court should have rendered. *Id.* When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *Id.*

## ANALYSIS

Gore raises five issues on appeal, asserting: (1) the trial court erred in granting summary judgment in favor of Trans Union; (2) federal law preempts an award of attorney's fees under the TBCC; (3) Trans Union is not a "prevailing party" and therefore is not entitled to attorney's fees under the TBCC; (4) the trial court lacked jurisdiction to award attorney's fees; and (5) the trial court abused its discretion in sustaining Trans Union's objections to Gore's summary judgment evidence. We address each issue in turn.

## I. The Trial Court Correctly Granted Summary Judgment in Favor of Trans Union

In his first issue, Gore contends the trial court erred by granting summary judgment in favor of Trans Union on Gore's claims under TBCC Chapter 20. We disagree.

### A. TBCC Section 20.05

TBCC Section 20.05 prohibits a consumer reporting agency from furnishing a consumer report which contains information related to "a case under Title 11 of the United States Code or under the federal Bankruptcy Act in which the date of entry of the order for relief or the date of adjudication predates the consumer report by more than 10 years." TEX. BUS. & COM. CODE § 20.05(a)(1).[3] The "order for relief" is measured from the date of the bankruptcy filing. *See* 11 U.S.C. § 301(b). In other words, a consumer reporting agency like Trans Union cannot furnish a consumer report that includes a bankruptcy filed more than ten years prior to the date of the consumer report.

Gore's live petition alleged Trans Union violated the TBCC by reporting Gore's 2015 bankruptcy for more than seven years, negatively impacting Gore's credit standing and his ability to acquire credit and expand his business. Gore alleged he filed a Chapter 13 bankruptcy on January 14, 2015. The proceeding was later converted to a Chapter 7 bankruptcy, and the bankruptcy was discharged on January

---

[3] Title 11 of the United States Code is the Bankruptcy Code. *See* 11 U.S.C. §§ 101–1532.

19, 2016. The summary judgment record indicates Trans Union reported Gore's bankruptcy as follows:

**Public Records**

This section includes public record items from local, state and federal courts and other public record sources that TransUnion may have obtained itself or through a third party vendor. In order to learn the identity of the third-party vendor (if any) that collected the public record item(s) in this section, please visit https://www.transunion.com/legal/public-records.

**USBK COURT NORTHERN TEXAS** Docket #: 1530254 ( 1100 COMMERCE ST, ROOM 1254, DALLAS, TX 75242, (214) 753-2000 )
Date Filed: 01/14/2015    Type:    CHAPTER 7 BANKRUPTCY DISCHARGED    Court Type:    US Bankruptcy Court
Date Paid: 01/19/2016    Responsibility: Individual Debt    Plaintiff Attorney: ANDREW DAVIS OOSTD
Date Updated: 01/20/2016
Estimated month and year that this item will be removed: 12/2024

The credit file accurately reflects Gore's bankruptcy. Less than ten years have elapsed since Gore filed for bankruptcy in January 2015. Accordingly, Trans Union did not violate TBBC Section 20.05. *See* TEX. BUS. & COM. CODE § 20.05(a)(1).

Gore argued that, because his bankruptcy was originally filed as a Chapter 13 bankruptcy, the reporting period should be only seven years. Gore does not cite any authority supporting this proposition. Both Chapter 13 and Chapter 7 bankruptcies fall within Title 11 of the United States Code. *See generally*, 11 U.S.C. §§701-784, 1301-1330. Accordingly, both have a reporting period of up to ten years under the TBCC. TEX. BUS. & COM. CODE § 20.05(a)(1).[4]

To support his seven-year reporting period argument, Gore relied on statements from a Trans Union webpage blog indicating that "a Chapter 13 bankruptcy will fall off your report seven years after the filing date." This reasoning fails. First, the trial court sustained Trans Union's objections to this evidence.[5]

---

[4]    We note the federal counterpart—the Fair Credit Reporting Act (FCRA)—also allows the reporting of Title 11 bankruptcies for up to ten years. *See* 15 U.S.C. § 1681(c)(a)(1).

[5]    We discuss the trial court's rulings on Gore's summary judgment evidence in Gore's fifth issue.

Second, Gore expressly brought his claims under TBCC Chapter 20, which permits a ten-year reporting period, as explained above. Third, this Court and others have held that a company's failure to follow internal policies and procedures does not give rise to a cause of action in favor of customers or others. *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2006)). The statements on Trans Union's webpage do not give rise to a cause of action in favor of Gore. Fourth and finally, Trans Union's webpage indicates the information contained therein is educational and not legal advice, and the page does not guarantee the accuracy of the information provided.

Gore produced no evidence Trans Union violated TBCC Section 20.05 by reporting his 2015 bankruptcy. Instead, the summary judgment record reflects Trans Union did not violate that statute. Accordingly, Trans Union was entitled to summary judgment for any claimed violation of TBCC Section 20.05.

## B. TBCC Sections 20.06 & 20.07

In his request for declaratory judgment, Gore alleged violations of TBCC Sections 20.06 and 20.07. Section 20.06 governs the procedures for a consumer to dispute information in his credit file. Among other things, it requires the consumer reporting agency to reinvestigate any disputed information within thirty days of the consumer's request, to promptly delete any inaccurate information in the consumer's file, and to provide written notice to the consumer regarding the results of the

reinvestigation. *See generally*, TEX. BUS. & COM. CODE § 20.06. TBCC Section 20.07 requires that the consumer reporting agency provide certain methods, e.g. facsimile or other automated means, for third parties to correct previously-reported inaccurate information. *Id.* § 20.07(a). That section also requires the consumer reporting agency to have reasonable procedures to assure that previously-reported inaccurate information in a consumer's file is promptly corrected. *Id.* § 20.07(b).

On appeal, Gore does not address how Trans Union violated these provisions, or what summary judgment evidence supports his contentions. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record. TEX. R. APP. P. 38.1(i). When a party fails to adequately brief a complaint, she waives the issue on appeal. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). Gore has waived any complaints regarding the alleged violations of Sections 20.06 and 20.07 of the TBCC. *See id.*

Regardless, the summary judgment record reflects Trans Union received notice from Gore on August 23, 2022, wherein Gore disputed the bankruptcy reported on his credit file. Trans Union immediately performed a reinvestigation regarding the bankruptcy. The evidence shows that a Trans Union investigator accessed Gore's bankruptcy case via the PACER[6] service. The case docket

---

[6] Public Access to Court Electronic Records.

confirmed Gore filed a Chapter 13 bankruptcy on January 14, 2015, it was converted to Chapter 7 in September 2015, and it was discharged on January 19, 2016. The investigator verified the bankruptcy was accurately reported in Gore's credit file, with a scheduled removal date in December 2024, within the ten-year reporting limitation in the TBCC (and the FCRA). Trans Union sent the results of its reinvestigation to Gore on August 27, 2022, just four days after Trans Union had received Gore's dispute.

Ultimately, Gore produced no evidence to support that Trans Union violated Section 20.06 or 20.07 of the TBCC. Instead, the summary judgment evidence indicates Trans Union complied with those statutory provisions. Finally, to the extent Gore argues Trans Union violated Section 20.06 or 20.07 by failing to correct any inaccuracy in his credit file, this argument fails. As we have addressed, Gore's Trans Union credit file accurately reflects his bankruptcy and its ultimate discharge.

### C.    Conclusion regarding alleged violations of the TBCC

Based on the foregoing, the trial court did not err in granting summary judgment in favor of Trans Union and denying Gore's motion for summary judgment. We overrule Gore's first issue.

## II.    The FCRA Does Not Preempt an Award of Attorney's Fees

In his second issue, Gore contends the trial court's award of attorney's fees was improper because the FCRA preempts the attorney's fees provision of the TBCC. We disagree.

The TBCC dictates that the prevailing party in an action brought under Chapter 20 "shall be compensated for the party's attorney fees and costs of the proceeding as determined by the court…." TEX. BUS. & COM. CODE § 20.08(c). The trial court expressly determined Trans Union was the prevailing party and awarded attorney's fees as required by the statute.

Initially, we question whether Gore preserved his preemption argument. Where preemption by federal law would result only in a change of the applicable law, rather than the subject matter jurisdiction of the trial court, preemption is an affirmative defense that must be raised in the party's pleadings, or it is waived. *See Toyota Motor Sales, U.S.A., Inc. v. Reavis*, 627 S.W.3d 713, 727 (Tex. App.—Dallas 2021, pet. granted, judgm't vacated w.r.m.) (citing *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 545–46 (Tex. 1991) (op. on reh'g)). Here, preemption by the FCRA on the issue of attorney's fees would not deprive the trial court of subject matter jurisdiction. Accordingly, Gore was required to raise preemption as an affirmative defense. However, he did not assert preemption in his petition, in response to Trans Union's request for attorney's fees in its answer, or in response to Trans Union's request for attorney's fees in its motion for summary judgment. Only after the trial court granted Trans Union's motion for summary judgment did Gore argue the FCRA preempts an award of attorney's fees under TBCC Section 20.08. We conclude Gore failed to preserve the preemption argument for appeal. *See Reavis*, 627 S.W.3d at 727.

Even if Gore had preserved the issue, Gore has not shown the FCRA preempts TBCC Chapter 20's attorney's fees provision. There are three types of federal preemption: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 473–74 (5th Cir. 2013) (citing *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 630-31, 132 S. Ct. 1261, 182 L. Ed. 2d 116 (2012)).

Gore argues the attorney's fees provision in TBCC Chapter 20 conflicts with Sections 1681n(c) and 1681o(b) of the FCRA. Those portions of the FCRA govern civil liability for willful or negligent noncompliance with the act and direct the court to award attorney's fees to a prevailing party when an unsuccessful pleading, motion, or paper is filed in bad faith or for purposes of harassment. 15 U.S.C. §§ 1681n(c), o(b).

We first note the FCRA expressly omits Sections 1681n(c) and 1681o(b) from those portions of the statute meant to preempt state law. *See* 15 U.S.C. § 1681t (outlining the FCRA provisions intended to have preemptive effect). Furthermore, the Bureau of Consumer Financial Protection has recently indicated the FCRA's express preemption provisions "have a narrow and targeted scope." The Fair Credit Reporting Act's Limited Preemption of State Laws, 87 Fed. Reg. 41042 (July 11, 2022). We conclude the FCRA does not expressly preempt the attorney's fees provision in TBCC Section 20.08(c).

We also conclude the attorney's fees provision in TBCC Section 20.08(c) does not conflict with the FCRA. Conflict preemption exists when it is impossible for a private party to comply with both state and federal law, and where, under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373, 120 S. Ct. 2288, 2294, 147 L. Ed. 2d 352 (2000) (citations omitted). That TBCC Section 20.08(c) allows attorney's fees for the prevailing party in the absence of a finding of bad faith or harassment by the opposing party does not create an impossibility for compliance or stand as an obstacle to accomplishing Congress's purposes in enacting the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205, 167 L. Ed. 2d 1045 (2007) (Congress enacted the FCRA to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy); 15 U.S.C. § 1681(b) (purpose of FCRA is to require that consumer reporting agencies adopt reasonable procedures for using consumer credit information). This is particularly true where Gore brought his claims under TBCC Chapter 20 rather than federal law. Gore has not cited, nor have we located, any authority holding that the FCRA attorney's fees provisions preempt fee-shifting provisions in analogous state consumer credit laws. At least one court has held to the contrary. *Gomon v. TRW, Inc.*, 34 Cal. Rptr. 2d 256, 265 (Cal. App. 4th Dist. 1994, review denied) (holding that similar state credit reporting act did not conflict with FCRA regarding

–13–

an award of attorney's fees and noting that a consumer may avoid the risk of having to pay the defendant's attorney's fees by suing under the FCRA rather than the state statute). We overrule Gore's second issue.[7]

## III. Trans Union Was Entitled to Attorney's Fees as the Prevailing Party

In his third issue, Gore contends Trans Union was not entitled to attorney's fees because it was not a "prevailing party" as contemplated by TBCC Chapter 20. We disagree.

Again, the TBCC mandates an attorney's fee award for the "prevailing party." TEX. BUS. & COM. CODE § 20.08(c). Gore contends Trans Union is not a "prevailing party" because it was not awarded damages and did not obtain actual and meaningful relief, citing *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650 (Tex. 2009). That case involved a plaintiff who prevailed on a breach of contract claim but recovered no damages, secured no declaratory or injunctive relief, and received nothing of value. *Id.* at 652-55. However, our supreme court has explained that "a defendant can obtain actual and meaningful relief, materially altering the parties' legal relationship, by successfully defending against a claim and securing a take-nothing judgment on the main issue or issues in the case." *Rohrmoos*

---

[7] Gore has not argued field preemption; accordingly, we do not address it. TEX. R. APP. P. 38.1(i). Similarly, we do not address Gore's equal protection and ambiguity arguments, raised for the first time on appeal. *In re Baby Boy R.*, 191 S.W.3d 916, 921 (Tex. App.—Dallas 2006, pet. denied) (constitutional claims must be raised below or they are not preserved for appellate review) (citations omitted); TEX. R. APP. P. 33.1(a).

*Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 486 (Tex. 2019). In such instances, the defendant is a "prevailing party." *Id.*

*Rohrmoos Venture* involved the interpretation of the phrase "prevailing party" under a lease, but the same logic applies here. The TBCC mandates an attorney's fees award to the "prevailing party." TEX. BUS. & COM. CODE § 20.08(c). Trans Union successfully defended against Gore's suit and secured a take-nothing judgment on all his claims. Accordingly, Trans Union is the "prevailing party" and entitled to an award of attorney's fees under the statute. *Id.*; *Rohrmoos Venture*, 578 S.W.3d at 486. We overrule Gore's third issue.

## IV. The Trial Court Had Jurisdiction To Award Attorney's Fees

In his fourth issue, Gore contends the trial court lacked jurisdiction to award attorney's fees because the case was removed to federal court for a time. We disagree.

When a federal court remands a case, jurisdiction is returned to the state court. *Gonzalez v. Guibot*, 315 S.W.3d 533, 538 (Tex. 2010); *Quaestor Invs., Inc. v. State of Chiapas*, 997 S.W.2d 226, 228 (Tex. 1999*), abrogated on other grounds by Ex parte E.H.*, 602 S.W.3d 486 (Tex. 2020).

Here, Gore's case was removed to federal court on January 3, 2023, and remanded back to the trial court on March 21, 2023. The parties filed their respective motions for summary judgment after remand. The trial court signed the order granting summary judgment in favor of Trans Union on June 1, 2023, and the final

–15–

judgment (which included the attorney's fees) on July 5, 2023. There is nothing to indicate the trial court took any action during the period of removal. Gore's argument lacks any factual basis.

Gore also seems to argue the trial court could not award attorney's fees for any legal services performed during the period of removal. However, Gore filed suit under TBCC Chapter 20, which mandates attorney's fees for the prevailing party. Nothing in the statute limits the prevailing party's entitlement to attorney's fees to only those incurred while the case was in state court. Indeed, Chapter 20 contemplates that a suit to enforce the statute's requirements may proceed in federal court. *See* TEX. BUS. & COM. CODE § 20.08(a). If the legislature intended to limit attorney's fees to legal services provided only when the case proceeds in state court, the legislature could have said so. It did not.

Trans Union incurred attorney's fees in defending against Gore's claims and provided evidence in support. The trial court had jurisdiction over Gore's suit after remand and at the time it ruled in favor of Trans Union and awarded its attorney's fees. We overrule Gore's fourth issue.

## V. Evidentiary Rulings

In his fifth issue, Gore contends the trial court abused its discretion in sustaining Trans Union's objections to Gore's summary judgment evidence, hampering Gore's ability to present his case. We disagree.

Once again, we question whether Gore preserved his complaints for appeal. Gore did not respond to Trans Union's evidentiary objections prior to the trial court's ruling on the objections or the motions for summary judgment. *See* TEX. R. CIV. P. 166a(c) (issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal); TEX. R. APP. P. 33.1(a). Only in Gore's motion to set aside the summary judgment did Gore finally attempt to address Trans Union's objections. Regardless, even considering Gore's evidentiary arguments, he has not demonstrated reversible error, as discussed below.

Evidentiary rulings are committed to the sound discretion of the trial court, and we will not disturb those rulings on appeal in the absence of an abuse of discretion. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Id.* An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

An erroneous exclusion of evidence is not reversible error unless it was harmful—that is, it "probably caused the rendition of an improper judgment." *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 840 (Tex. 2018); TEX. R. APP. P. 44.1(a). Exclusion of evidence is likely harmless if the evidence was cumulative or if the rest of the evidence was so one-sided that the error likely made no difference

–17–

in the judgment. *Id.* (citations omitted). Conversely, the exclusion is likely harmful if it was "crucial to a key issue." *Id.*

Though his brief is not clear, Gore seems to assert the trial court improperly excluded statements in his affidavit where he purported to express his opinion regarding credit reporting laws. Presumably, Gore refers to the following statements in his affidavit:

> Defendant Trans Union is the only entity of the three major national credit bureau that is currently maintaining and reported the bankruptcy tradeline after the 7 year reporting period.

> Defendant, Trans Union has publicly published the requirements for removal of bankruptcy on their website, www.transunion.com.

> Bankruptcy under Title 11, Chapter 13 of the United States Code or under the federal Bankruptcy Act should not be reported more than 7 years after filing current credit reporting.

The first and third statements contain erroneous statements of law. As we have explained, both state and federal law permit reporting of Title 11 bankruptcies for up to ten years. TEX. BUS. & COM. CODE § 20.05(a)(1); 15 U.S.C. § 1681c(a)(1). And, even if Trans Union is the only credit bureau reporting Gore's bankruptcy, Trans Union is legally permitted to do so. That other credit bureaus may not be reporting Gore's bankruptcy is irrelevant to his claims against Trans Union. Also, as we have explained, Trans Union's website is no evidence of the permissible reporting period. Accordingly, even considering the foregoing statements from Gore's affidavit, they do not raise a fact issue to defeat Trans Union's summary judgment motion. Thus, the exclusion of such evidence, even if error, was harmless.

–18–

Next, Gore complains of the trial court's exclusion of Gore's "credit disclosures." Presumably, Gore is referring to summary judgment exhibits 5, 6, 8, and 9. Exhibits 5 and 6 are printouts from Credit Karma titled "Your Credit Health." Those documents purport to list Gore's various credit accounts. Exhibit 5 purports to be based on information provided by Trans Union, while Exhibit 6 appears to be based on information from Equifax. Gore's Chapter 7 bankruptcy is listed under the "Public Records" sections of both these documents, and both accurately reflect the January 2015 bankruptcy filing and its discharge. Thus, even if considered, these documents are no evidence to support Gore's TBCC claims. The remainder of the reports indicate various credit accounts with no relevance to this proceeding.

Exhibits 8 and 9 appear to be Gore's credit reports from Experian and Equifax, respectively. These reports from other credit bureaus have no relevance to Gore's claims against Trans Union. Even if these other credit bureaus chose not to include Gore's bankruptcy in their reports, they are not evidence Trans Union violated TBCC Chapter 20.

None of the excluded summary judgment evidence contradicted the facts that Gore filed for bankruptcy on January 14, 2015, and received a Chapter 7 bankruptcy discharge in January 2016. These facts were accurately reported by Trans Union. The excluded evidence does not support Gore's claims Trans Union violated TBCC

Chapter 20. Ultimately, Gore has failed to demonstrate any harmful error in the exclusion of the foregoing evidence. We overrule Gore's fifth issue.[8]

## CONCLUSION

The trial court did not err in granting summary judgment in favor of Trans Union and denying Gore's motion for summary judgment. Gore did not produce any evidence supporting that Trans Union violated TBCC Chapter 20. Additionally, federal law does not preempt an award of attorney's fees under TBCC Chapter 20, and Trans Union was entitled to such fees as the "prevailing party." Furthermore, on remand from federal court, the trial court had jurisdiction to award attorney's fees. Finally, even if the trial court abused its discretion in excluding Gore's summary judgment evidence, Gore has not demonstrated harmful error. Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

230659F.P05

---

[8] In the "Issues Presented" section of his brief, Gore also claims error in the trial court's exclusion of evidence related to his injuries. However, Gore failed to brief this issue and has waived any such complaint. TEX. R. APP. P. 38.1(i); *Washington*, 362 S.W.3d at 854.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TERRENCE GORE, Appellant

No. 05-23-00659-CV        V.

TRANS UNION LLC, Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-22-15076.
Opinion delivered by Justice Partida-
Kipness. Justices Goldstein and
Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TRANS UNION LLC recover its costs of this appeal from appellant TERRENCE GORE.

Judgment entered this 9th day of October, 2024.